NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                      :
RONALD GARRY,                         :
                                      :        Civil No. 13-3907 (ES)
              Petitioner,             :
                                      :
      v.                              :        OPINION
                                      :
CHARLES WARREN, JR.,                  :
                                      :
              Respondent.             :
_____:

SALAS, DISTRICT JUDGE

Petitioner Ronald Garry ("Petitioner"), a prisoner confined at New Jersey State Prison in

Trenton, New Jersey at the time of filing, has submitted a Petition for a Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254.   (D.E. No. 1).   For the reasons stated below, the Petition will be

denied.

## I. BACKGROUND

This Court, affording the state court's factual determinations the appropriate deference, _see_

28 U.S.C. § 2254(e)(1)[1], will recount salient portions of the recitation of facts as set forth by New

Jersey Superior Court, Appellate Division in its opinion on direct appeal:

> The charges against defendant arose from an incident occurring on
> October 1, 2003, at the Baxter Terrace Housing Project on James
> Street in Newark. The evidence adduced by the State at trial, if
> credited, disclosed the following.

_____

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of
a factual issue made by a State court shall be presumed to be correct. The applicant shall have the
burden of rebutting the presumption of correctness by clear and convincing evidence."

At approximately 4:00 p.m. on October 1, defendant and George Davis became engaged in an oral argument in the courtyard of the housing project that escalated into a fist fight. Others watching the fight broke it up. Following the fist fight, Davis walked across the courtyard toward his second-floor apartment in the building known as 172 James Street in order to change his clothes, which had been ripped during the fight. After entering his apartment building, Davis realized that he did not have keys to access the apartment, so he went back outside into the courtyard where his stepfather was located to get his keys.

At that time, Sonya Rodriguez was home in her second-floor apartment in the 172 James Street building. Her apartment was located next door to Davis' apartment. At the time, Kasanna Harris, who dated Rodriguez's son, was visiting with Rodriguez in the apartment.

As Davis walked into the courtyard looking for his stepfather, he heard a female voice yell to him: "look out." Heeding the warning, Davis began running back toward his apartment building. Rodriguez and Harris, who had heard the commotion in the courtyard, were looking out into the courtyard from a window in Rodriguez's apartment. Defendant had returned to the courtyard with a handgun, and he began firing shots at the retreating Davis toward the apartment building at 172 James Street.

One of the shots fired by defendant struck Rodriguez while she was looking out the window; she died from the gunshot wound. Harris was struck by a piece of glass from a window in the apartment that had shattered when struck by the bullet. Although one of the bullets struck a door to the building that [Davis] was attempting to open during his flight from the courtyard, he was not hit by any of the bullets.

At the time of the incident, Celeste M. Zayes, Rodriguez's daughter, lived in an apartment on the third floor, directly above her mother's apartment. Zayes heard a commotion, went to her window and look out into the courtyard, where she saw defendant and Davis engaged in the fist fight. After the fight ended, Zayes put her daughter into her bedroom, and returned to the window, whereupon she saw that defendant was in the courtyard with a gun in his hand. Zayes then saw defendant start shooting in the direction of her building; she yelled to defendant, telling him to stop shooting, but he did not

2

acknowledge her. She heard defendant fire four or five shots. Kasanna Harris testified that after the fist fight she saw defendant reenter the courtyard with a handgun, and start shooting it toward the direction of the apartment building. She stated that a bullet shattered the glass of the apartment window and struck Rodriguez. Harris testified she received a cut on her stomach from the shattering glass.

Robert Smith, who was residing at 184 James Street, was leaving his apartment, when he saw defendant in the courtyard arguing about something with his sister Tameka. Smith then saw a car pull up and someone inside the car handed defendant a pistol, whereupon defendant began shooting toward the apartment building at 172 James Street.

Defendant was later apprehended attempting to leave the project complex. The handgun was never recovered.

*State v. Garry*, No. A-3869-04T1, 2006 WL 1549752, at *2–3 (N.J. Super. Ct. App. Div. June 8, 2006).

Petitioner was charged in Essex County Indictment Number 2004-01-105 with first-degree purposeful or knowing murder of Sonya Rodriguez, N.J.S.A. 2C:11-3a(1), -3a(2) (count one); first-degree attempted murder of George Davis, N.J.S.A. 2C:11-3 and 2C:5-1 (count two); second-degree aggravated assault of Kasanna Harris, N.J.S.A. 2C:12-1b(1); second-degree aggravated assault of George Davis, N.J.S.A. 2C:12-1b(1) (count four); third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5b (count five); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4a (count six). *Id.* Petitioner was also charged in Essex County Indictment Number 2004-01-106 with second-degree unlawful possession of a firearm by a convicted felon, N.J.S.A. 2C:39-7b. *Id.* The charges against Petitioner in Indictment Number 04-01-105 were tried to a jury between November 8, 2004 and November 19, 2004. *Id.* On count one, the jury found Petitioner guilty of the lesser-included offense of second-degree

3

passion/provocation manslaughter of Sonya Rodriguez, N.J.S.A. 2C:11-4b(2).   *Id.*   On count two, Petitioner was convicted on the lesser-included offense of second-degree attempted passion/provocation manslaughter of George Davis, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-4b(2).   *Id.*   On count three, the jury convicted Petitioner of second-degree aggravated assault of Kasanna Harris, N.J.S.A. 2C:12-1b(1).   *Id.*   The jury also convicted Petitioner of the weapons charges contained in counts five and six.   *Id.*   The aggravated assault charge contained in count four had been dismissed and was not submitted to the jury.   *Id.*

Following the jury's verdict, the second-degree weapon charge contained in Indictment Number 04-01-106 was then submitted to the jury, which returned a guilty verdict.   *Id.*   The State applied for sentencing of Petitioner to an extended term, as a persistent offender, on the passion/provocation manslaughter conviction on count one.   *Id.*   The trial judge granted that motion.   *Id.*   Finding no mitigating factors and the presence of aggravating factors N.J.S.A. 2C:44-1a(3), "[t]he risk that the defendant will commit another offense;" N.J.S.A. 2c:44-1A(6), "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted;" and N.J.S.A. 2C:44-1b(9), "[t]he need for deterring the defendant and others from violating the law [,]" the judge imposed an extended term of twenty years' imprisonment on the conviction on count one, subject to an eighty-five percent parole disqualifier pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.   *Id.*   On the attempted passion/provocation manslaughter conviction on count two, the judge imposed a consecutive term of ten years' imprisonment, subject to an eighty-five percent NERA parole disqualifier.   *Id.*   Concurrent terms of ten years' imprisonment, with a NERA parole disqualifier (count three, aggravated assault), and five years' imprisonment, with a two and one-half year parole disqualifier

(count five, unlawful possession of a weapon) were also imposed. *Id.* The second-degree possession of a firearm for an unlawful purpose conviction on count six was merged and dismissed. *Id.* On the conviction in Indictment Number 2004-02-106, Petitioner was sentenced to a ten-year term of imprisonment, with a five-year period of parole ineligibility, concurrent with the terms imposed on the other indictment. *Id.* The aggregate term imposed was a term of thirty years' imprisonment with an eighty-five percent parole disqualifier. *Id.*

On direct appeal, the Appellate Division affirmed Petitioner's convictions and sentence. *Id.* The New Jersey Supreme Court granted certification limited to Petitioner's sentence, and summarily remanded to the trial court for resentencing in light of *State v. Natale*, 184 N.J. 458 (2005) and *State v. Pierce*, 188 N.J. 155 (2006). *State v. Garry*, 907 A.2d 1011 (N.J. 2006). On remand, the trial judge imposed the same sentence, which the Appellate Division affirmed, and the New Jersey Supreme Court denied the petition for certification. *State v. Garry*, 970 A.2d 1047 (N.J 2009). Petitioner thereafter filed his petition for post-conviction relief ("PCR"), which was denied by the PCR court and the Appellate Division affirmed. *State v. Garry*, No. A-2528-10T1, 2012 WL 5041551, at *1 (N.J. Super. Ct. App. Div. Oct. 19, 2012). Petitioner's petition for certification was denied by the New Jersey Supreme Court. *State v. Garry*, 65 A.3d 261 (N.J. 2013).

On June 17, 2013, Petitioner filed the instant habeas Petition. (D.E. No. 1.) Respondent filed an Answer (D.E. No. 10) and Petitioner filed a Reply. (D.E. No. 22). Petitioner raises the following grounds for relief:

> Ground One: Prosecutor's summation comments deprived defendant
> of his right to a fair trial
>
> Ground Two: The court below improperly sentenced appellant

5

Ground Three: Defendant was denied a fair trial in violation of his state and federal constitutional rights when the judge interferred [sic] with a witnesses [sic] testimony, and then expressed disbelief in the witness answer, ultimately causing him to change his answer

Ground Four: Defendant was denied his state and federal constitutional rights to a fair trial and trial by indictment by the court's decision to charge the jury with lesser included offense of aggravated, reckless, and passion/provocation manslaughter over the objection of defense counsel

Ground Five: The court's decision to charge the lesser include [sic] offense over the objection of defense counsel improperly relieved the state of its burden of proof and reduced the reasonable doubt standard

Ground Six: Defendant was denied a fair trial and the effective assistance of trial and appellate counsel in violation of federal and state constitutional

Ground Seven: Ineffective trial counsel failed to assert a *Brady* violation and/or move to bar testimony of a state's witnesss [sic] after discovering that portions of the witnesses statements to prosecutors were supressed [sic], thus violating defendant's due process and confrontation/cross-examination rights

Ground Eight: Ineffective trial counsel failed to assert a *Brady* violation based upon statte's [sic] investigators willful suppression of exculpatory evidence

Ground Nine: Trial counsel was ineffective for not advising defendant of his right to testify

Ground Ten: Appellate counsel faild [sic] to raise as plain error trial consel's [sic] failures and the denial of defendant's fair trial rights

Ground Eleven: An evidentiary hearing should be granted.[1]

---

[1] Because the Court is denying habeas relief on all of his ineffective assistance grounds based on the state court record, his request for an evidentiary hearing is dismissed as moot.

## II. DISCUSSION

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district
> court shall entertain an application for a writ of habeas corpus in
> behalf of a person in custody pursuant to the judgment of a State
> court only on the ground that he is in custody in violation of the
> Constitution or laws or treaties of the United States.
>
> . . .
>
> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding . . . .

28 U.S.C. § 2254.

"§ 2254 sets several limits on the power of a federal court to grant an application for a writ

of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011);

*Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). Section 2254(a) permits a court to entertain

only claims alleging that a person is in state custody "in violation of the Constitution or laws or

treaties of the United States." *Id.*

A federal court's authority to grant habeas relief is further limited when a state court has

adjudicated petitioner's federal claim on the merits.  *See* 28 U.S.C. § 2254(d).[2]  If a claim has been adjudicated on the merits in state court proceedings, this Court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA."  *Parker*, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the

---

[2] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground."  *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)).  "Section 2254(d) applies even where there has been a summary denial." *Pinholster*, 563 U.S. 170, 187.  "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision."  *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 98 (2011)); *see also Johnson v. Williams*, 133 S.Ct. 1088 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted").

state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]"  *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.   However, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams,* 529 U.S. at 410).   "If this standard is difficult to meet—and it is—that is because it was meant to be."  *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013) (citations and internal quotation marks omitted).   The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. 170, 181 (2011).

**B.   Analysis**

**1.   Prosecutorial Misconduct (Ground One)**

In his first ground for relief, Petitioner alleges that comments by the prosecutor during his closing argument deprived Petitioner of his right to a fair trial.   Specifically, he alleges that "the prosecutor stated that the defense counsel's function was to 'protect the rights of her client' while the 'judge controls the entire process, especially the law….'"   Petitioner further argues that the prosecutor unfairly attacked defense counsel stating to the jury that she "would have you believe" that "five eyewitnesses came in and lied to you, that five eyewitnesses all of who knew Ronald Garry, decided to target him…that's what you have to accept. That's what counsel would have you

believed [sic]."   Petitioner also argues that the prosecutor improperly stated that the defense position was a "theory" which is "unarticulated and unexplained" and stated that "Mr. Davis does not want to make an identification. Why? I'm to surmise. He's in custody."   Finally, Petitioner asserts that the prosecutors also used the word fear numerous times.

Petitioner raised this ground in his direct appeal, where it was rejected by the Appellate Division:

> Defendant argues, for the first time on appeal, that he was denied a fair trial because of certain comments made by the prosecutor during his summation. In evaluating the prosecutor's comments in this case, we must examine his role. "Prosecutors occupy a unique position in the criminal justice system and their primary duty is not to obtain convictions, but to see that justice is done." *State v. Zola*, 112 N.J. 384, 426 (1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1146, 103 L. Ed.2d 205 (1989); *State v. Ramseur*, 106 N.J. 123, 320 (1987). A prosecutor is duty bound to confine his or her comments during summation to the facts revealed during trial and the reasonable inferences to be drawn from that evidence. *State v. Ackner*, 265 N.J.Super. 351, 357 (App.Div.), *certif. denied*, 134 N.J. 485 (1993). Certainly, not every departure from this requirement mandates reversal. *State v. Johnson*, 216 N.J.Super. 588, 614 (App.Div.1987). Prosecutorial misconduct is not a basis for reversal unless the conduct was so egregious that it deprived defendant of a fair trial. *State v. DiFrisco*, 137 N.J. 434, 474 (1994), *cert. denied*, 516 U.S. 1129, 116 S.Ct. 949, 133 L. Ed.2d 873 (1996); *Ramseur*, *supra*, 106 N.J. at 322. Accordingly, the prosecutor's statements must constitute a clear infraction and substantially prejudice the defendant's fundamental right to have the jury fairly evaluate the merits of his or her defense in order to warrant a reversal. *State v. Roach*, 146 N.J. 208, 219, *cert. denied*, 519 U.S. 1021, 117 S.Ct. 540, 136 L. Ed.2d 424 (1996); *State v. Bucanis*, 26 N.J. 45, 56, *cert. denied*, 357 U.S. 910, 78 S.Ct. 1157, 2 L. Ed.2d 1160 (1958).
>
> In considering whether prosecutorial misconduct is prejudicial and denied defendant a fair trial, an appellate court will consider "whether defense counsel made a timely and proper objection, whether the remark was withdrawn promptly, and whether the [judge] ordered the remarks stricken from the record and instructed the jury to disregard them." *State v. Marshall*, 123 N.J. 1, 153

10

(1991), *cert. denied*, 507 U.S. 929, 113 S.Ct. 1306, 122 L. Ed.2d 694 (1993)(quoting *Ramseur, supra*, 106 N.J. at 322-23); *State v. Bogen*, 13 N.J. 137, 141-42, *cert. denied sub nom.*, *Lieberman v. State*, 346 U.S. 825, 74 S.Ct. 44, 98 L. Ed. 350 (1953).

An appellate court "may infer from counsel's failure to object to the remarks at the time they were made that [she] did not in the atmosphere of trial think them out of bounds." *State v. Taylor*, 46 N.J. 316, 335 (quoting *State v. Johnson*, 31 N.J. 489, 511 (1960)), cert. denied, 385 U.S. 855, 87 S.Ct. 103, 17 L. Ed.2d 83 (1966); *State v. Murray*, 338 N.J.Super. 80, 87 (App.Div.), *certif. denied*, 169 N.J. 608 (2001). Moreover, prosecutors are permitted to respond to arguments raised by defense counsel as long as they do not stray beyond the evidence adduced at trial. *State v. Vasquez*, 374 N.J.Super. 252, 260 (App.Div.2005); *State v. Munoz*, 340 N.J.Super. 204, 216 (App.Div.), *certif. denied sub nom*, *State v. Pantoja*, 169 N.J. 610 (2001).

After analyzing the record in the light of these standards and considering the written arguments of counsel, we are not persuaded that the cited statements by the prosecutor were "clearly capable of producing an unjust result[.]" Our review of the prosecutor's summation as a whole satisfies us that there was nothing so egregious as to deprive defendant of a fair trial. *See State v. Frost*, 158 N.J. 76, 83 (1999). We also note that several of the now-objected comments by the prosecutor were fair response to defense counsel's assault on the credibility of the State's witnesses during her summation.

*Garry*, 2006 WL 1549752, at *3–4.

Federal habeas review is limited to determining whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).   In making this determination, courts must examine the entire proceedings of the case.   *Id.*   Courts must consider the prosecutor's conduct, the effect of curative instructions, and the strength of the evidence.   *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001) (citing *Darden v. Wainwright*, 477 U.S. 168, 183 (1986); *Donnelly*, 416 U.S. at 643).

11

Here, after reviewing the controlling case law, the state court correctly determined that the prosecutor's comments were not improper.   None of the comments identified by Petitioner "infected the trial with unfairness."   Rather, the prosecutor was advocating for his position and identifying flaws in the defense's case.   While Petitioner takes issue with the choices made by the prosecutor during his summation, looking at the trial as a whole, none of the statements rendered the resulting conviction a denial of due process.   Because the holding by the state court did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, habeas relief is denied on Ground One of the Petition.

**2.  Excessive Sentence (Ground Two)**

In his second ground for relief, Petitioner argues that he was "sentence[d] to the maximum (over the presumptive [sic]) terms on each conviction including a discretionary extended term. The court use [sic] defendant's prior record to make him eligigble [sic] for the extended term then use[d] it again to enhance his sentence."   Petitioner raised this issue on direct appeal before the Appellate Division, where it was denied, but the New Jersey Supreme Court then remanded for reconsideration in light of *State v. Natale*, 184 N.J. 458 (2005) and *State v. Pierce*, 188 N.J. 155 (2006).   The trial court then re-sentenced Petitioner to the same terms.

Petitioner raised this issue again in his appeal of the re-sentencing and the Appellate Division rejected that argument finding:

> This court having remanded this matter for reconsideration of sentence in light of *State v. Pierce*, 188 N.J. 155 (2006) and *State v. Natale*, 184 N.J. 458 (2005), and having considered the record and

12

> argument of counsel; and it appearing that the issues on appeal relate solely to the sentence imposed, we are satisfied that the presumptive term did not influence the weighing process and the sentence imposed in this case.   We are also satisfied that the findings of fact regarding aggravating and mitigating factors were based on competent and credible evidence in the record, that the court did not apply incorrectly the sentencing guidelines enunciated in the Code and that in applying the facts to the law, the court reached a conclusion that could have reasonably been made upon weighing of the relevant factors. *State v. O'Donnell*, 117 N.J. 210 (1989); *State v. Ghertler*, 114 N.J. 383 (1989); *State v. Roth*, 95 N.J. 334 (1984).
>
> The judgment of the trial court is affirmed.

(D.E. No. 10-6, Answer, Ex. 6, *State v. Garry*, A-001191-07T4 (N.J. Super. Ct. App. Div. 2009). Thereafter, the New Jersey Supreme Court denied certification.   *Garry*, 970 A.2d at 1047.

The exact nature of Petitioner's claim before this Court is unclear.   In his traverse, Petitioner attempts to clarify his argument.   Specifically, he states that he is "contending" that "once the court made the ruling of granting a discretionary extended term, the court could not sentence the petitioner over the statutory maximum of the extended-term (15) years and not barring the remainder counts (7) years and (4) years."   (D.E. No. 22, Reply 12).   It appears that Petitioner is arguing that his sentence somehow violates the Supreme Court holdings in *Blakely v. Washington*, 542 U.S. 296 (2004) and/or *Apprendi v. New Jersey*, 530 U.S. 466 (2000).   In *Apprendi*, pursuant to the Sixth Amendment right to trial by jury, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   In *Blakely*, the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any

additional findings." 542 U.S. at 302 (internal quotations omitted). However, the statute which provided authority for the imposition of Petitioner's extended-term sentence — N.J.S.A. 2C:44-3a — relies solely upon a defendant's prior criminal record to define eligibility for an extended-term sentence. In fact, during re-sentencing, the trial court made note of Petitioner's prior convictions:

> Now as to *Pierce*, the Court made a proper record that he met the minimum statutory requirements to be considered for the extended term, and the Appellate Division agreed that I had made that record. It -- once that statutory eligibility requirement has been made, under *Pierce*, the maximum sentence to which the defendant may be sentenced, for purposes of *Apprendi*, is the top of the extended term range. So the range of appropriate sentences becomes the minimum regular range up to the maximum extended term, and he was sentenced within that range.
>
> I find that the record that I made -- and I also believe that the Appellate Division seemed to have -- find no fault with my findings – adequately supports the -- number one, the decision to sentence him with the -- within the extended range, and number two, to sentence him within the maximum that was available under the law.

(D.E. No. 10-22, Answer, Ex. 21, Re-Sentencing Transcript 9:11-10:3).

Because Petitioner's extended-term sentence was not based on anything other than his prior convictions, Petitioner's assertion that the state court improperly sentenced him is without merit. *See Apprendi*, 530 U.S. at 490. Accordingly, the state court's rejection of Petitioner's challenge to his extended-term sentence, which was properly imposed pursuant to N.J.S.A. 2C:44-3a, is not contrary to, or an unreasonable application of, existing Supreme Court precedent. Petitioner is not entitled to habeas relief on this ground.

### 3.  Judicial Questioning (Ground Three)

In Ground Three of the Petition, Petitioner argues that his right to a fair trial was violated when the trial judge improperly questioned a witness and expressed disbelief as to the answer,

14

which then caused him to change his testimony.   Specifically, Petitioner alleges that

> Sergant [sic] Kennth [sic] green who was employed by the New
> Jersey Institute of Technology Police also the arresting officer of the
> defendant, was at the polce [sic[ station for the processing of the
> defendant. he testified for the state "stating" he was present when
> scrapings [sic] werte [sic] taken from the defendant's hands and
> believed that this was a gunpowder test.   The court intervene during
> "recross" expressing disbelief telling the state witness to "be very
> careful how you answer this question." Causing the witness to
> change his testimony.

(Pet. ¶ 12).[2]

Questions by the judge which are designed to clarify testimony that do not pertain to an

ultimate issue of fact for the jury are proper unless they convey to the jury judicial belief as to the

proper outcome of the trial.   *United States v. Beaty*, 722 F.2d 1090, 1094 (3d Cir.1983).

"[I]solated questioning to clarify ambiguities is one thing," but "a trial judge cannot ... take over

the cross-examination for the government to merely emphasize the government's proof or question

the credibility of the defendant and his witnesses.."   *United States v. Ottaviano*, 738 F.3d 586,

595 (3d Cir. 2013) (quoting *Beaty*, 722 F.2d at 1095).   "The judge's participation must never reach

the point where 'it appears clear to the jury that the court believes the accused is guilty.'"   *Id.*

When scrutinizing judicial interrogation of a witness, it is not the number of questions that is at

issue, but whether the defendant was prejudiced.   *See United States v. Kelly*, 329 F.2d 314, 325

(3d Cir. 1964).

---

[2] It appears that Petitioner raised this issue in his PCR proceedings, but the state court did not
expressly address it.   Although the parties contest the applicable standard of review the Court
should apply when reviewing this claim, it is not necessary to decide that issue since even under
*de novo* review, Petitioner is not entitled to habeas relief on this ground.   *See Frazier v. Sec'y
Pennsylvania Dep't of Corr.*, No. 14-4425, 2016 WL 5764117, at *1 (3d Cir. Oct. 4, 2016) (citing
*Taylor v. Horn*, 504 F.3d 416, 453 (3d Cir. 2007)).

Here, there was no risk of the appearance of impropriety with the judge's questions. During the cross-examination of the arresting officer, Sergeant Green of the New Jersey Institute of Technology, he testified as follows:

> Q At some point in time, were you present when scrapings were taken from Mr. Garry's hands in the room?
>
> A Scrapings?
>
> Q For a gun powder residue test.
>
> A I believe I was.
>
> Q You were present for the scrapings?
>
> A I believe I was.
>
> Q And, in fact, were you present for the presentation of the results to him?
>
> A Yes, I believe I was.
>
> Q You were present for the presentation?
>
> A I believe I was.
>
> Q And he was advised of these, the results this gunpowder residue test; correct?
>
> A I believe so.

(D.E. No. 10-16, Answer, Ex. 16, Trial Tr. 108:22-109:8, Nov. 15, 2004).   On re-direct, the witness testified as follows:

> Q What testing was done? Do you recall that, or are you just going with counsel?
>
> A I don't recall what exact testing it was.
>
> Q Well, was there any -- do you have any independent recollection of any testing?

16

A I don't know what it was. I just –

Q Well, you've indicated certain testing was done in your presence. Do you know what was done? Do you recall this?

A I recall them saying something to him about what's that on your hand, but I don't know the terminology for the testing.

Q Well, what was done in your presence if you recall?

A I don't recall it offhand. I think it was some type of -- I don't know if it was powder or what it was they put on his hands -- it would be a substance and when it came back, I believe it to be a gun powder residue testing.

Q Well, do you know what a gun powder residue is?

A No.

Q Have you ever seen one before?

A No.

Q Was this just done in an open room?

A That's correct.

Q And how long did this test take?

A Not long at all.

Q Well, in terms of minutes or seconds?

A I don't recall it being that long. It wasn't – it wasn't something that -- I mean, I was looking at paperwork, and I know they were doing something, but it was brief.

Q Well, what were they doing something, or do you know?

A I don't know what they were.

(*Id.* at 110:7-111:17).

17

Then on re-cross, the following exchange occurred:

BY [DEFENSE COUNSEL]

Q I just want to confirm. You were advised or you heard that it was a gun powder residue test that was being conducted; correct?

A I heard something to that -- not that it was –

Q And you heard them attempting to present the results to Mr. Garry; correct?

THE COURT: Be very careful how you answer these questions.

THE WITNESS: Yes.

THE COURT: If you know, then please tell us.

THE WITNESS: I don't recall how they were presenting it to him.

BY [DEFENSE COUNSEL]

Q Not the specific way they were presenting, but they did present the results to Mr. Garry; correct?

A I don't know if they were giving him results, I just heard words, so I don't know exactly what they were

Q Okay.

A presenting to him.

DEFENSE COUNSEL: Okay. I have nothing further, your Honor.

THE COURT: Well, did you say you saw a test?

THE WITNESS: I saw them come in.

THE COURT: Now, listen to what I'm saying.  Did you say you saw the test performed?

THE WITNESS: I saw the detectives come in as I was sitting there.

THE COURT: Listen to me. Did you say a moment ago that you

saw a test performed?

THE WITNESS: I said that, your Honor.

THE COURT: Did you see a test performed?

THE WITNESS: No.

THE COURT: You have to be very careful. You can say whatever is accurate, but you have to be very careful to answer the question you're being asked.

THE WITNESS: Okay.

THE COURT: Anything else?

[GOVERNMENT]: No, Judge.

THE COURT: Anything else?

(There is no response.)

THE COURT: The witness is excused.

[DEFENSE COUNSEL]: Actually, your Honor, I do have another question for

THE COURT: Be seated.

BY [DEFENSE COUNSEL]

Q You indicated that you don't know that a test was performed; correct?

A That is correct.

Q But you saw what appeared to be something being done with regards to gunpowder residue; correct?

A That's what I believed, but I don't know if it was a test. I heard -- overheard the detective saying something.

Q About?

A I heard the I'm sorry. detective –

THE COURT: We're not asking you what somebody else said, because you're not permitted to say that. We're asking you what you saw. Or they're asking you what you saw.

THE WITNESS: Okay. I saw a man with something in his hand. I don't know what exactly it was, but just something in his hand talking to that gentleman there.

Q And at some point in time, did you see them doing anything with Mr. Garry's hands?

A I don't recall at this time.

[DEFENSE COUNSEL]: I have nothing further.

(*Id.* at 111:20-115:6).

Viewing the exchange as a whole, it is clear that the trial judge only asked questions of the witness to clarify his confusing and contradictory testimony, as well as to prevent the introduction of hearsay. Nothing in the court's questioning would suggest a bias or prejudice to the jury and as such, did not violate Petitioner's federal constitutional rights. Habeas relief is denied on this ground.

**4.  Ineffective Assistance of Counsel (Grounds Four through Ten)**

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *See Strickland*, 466 U.S. at 687. First, the

defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88.   "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"   *Pinholster*, 563 U.S. at 189 (citing *Strickland*, 466 U.S. at 690).   "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'"   *Id.* (citing *Strickland*, 466 U.S. at 688).

Further, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.   The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.   *Id.*

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."   *Id.* at 695.   "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"   *Richter*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 687).   As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a

> given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one."  *Strickland*, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

### a. Failure to Challenge Lesser-Included Charge (Grounds Four and Five)

In Grounds Four and Five of the Petition, Petitioner argues that his appellate counsel was ineffective for failing to challenge the trial court's decision to charge the jury on the lesser included offense of passion/provocation manslaughter over defense counsel's objection and the fact that inclusion of the lesser-included offense charge relieved the state of its burden of proof.[3]

Petitioner raised this issue in his PCR Petition, where it was denied by the state court.

> Though I was not the trial Judge in this case, case law is clear that the Judge, whether it is requested or not, is required to give a charge to the jury when the facts adduced at trial clearly indicate that the jury could convict on the lesser offense while acquitting on the greater offense. Again, I was not the trial Judge but it is clear, given the allegations in this case, a fight, a sensation of the fight cessation -- a defendant, namely Mr. Garry, returning with a gun, shooting wildly in that clearly this could have very well been passion/provocation. There was not time to cool off, etcetera, etcetera.
>
> And I'm well satisfied that if, in fact, Mr. Garry had been convicted

---

[3]  While the exact nature of Petitioner's claims was not clear in his Petition, he clarified his position in his Reply, wherein he argued that appellate counsel was ineffective for these reasons and addressed the ineffective assistance of counsel analysis under *Strickland*.  (D.E. No. 22, Reply 20-29).

> of murder, we'd be having this argument now on how come though it wasn't requested, it was plain error by trial counsel not to request passion/provocation or lesser included. Clearly, the facts of this case indicated that the lesser included offense were a viable possibility. Clearly, I'm satisfied that the Appellate Division would not have reversed, even if this fact had been raised by Appellate counsel, and I'm therefore equally satisfied then that there has not been a violation of *Strickland v. Washington*. That is, there is not ineffective assistance of Appellate counsel for not raising it because it was not a winable issue, as far as I can tell, based on the transcripts and my understanding of the case law.

(D.E. No. 23, PCR H'rg Tr. 9:9-10:11).   The Appellate Division affirmed for the reasons stated by the PCR court.   *Garry*, 2012 WL 5041551, at *3.

The PCR court properly determined that Petitioner could not meet the prejudice prong of *Strickland*.[4]   Under New Jersey law, an unrequested charge on a lesser included offense must be given only where the facts in evidence "clearly indicate" the appropriateness of that charge.   *State v. Savage*, 799 A.2d 477, 491 (N.J. 2002).   Passion/provocation manslaughter has four elements: "(1) reasonable and adequate provocation; (2) no cooling-off time in the period between the provocation and the slaying; (3) a defendant who actually was impassioned by the provocation; (4) a defendant who did not cool off before the slaying."   *State v. Galicia*, 45 A.3d 310, 379 (N.J. 2012).   Here, as found by the PCR court, there was evidence at trial that a fight involving Petitioner occurred and without a cooling off period, Petitioner returned to the location of the fight and began shooting.   Despite the fact that Petitioner argues that his theory of the case was one of mistaken identity by the multiple eye witnesses, it is clear that it was appropriate for the trial judge

---

[4] Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). An attorney's decision about which issues to raise on appeal are strategic, and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000).

to *sua sponte* charge on the lesser-included offense of passion/provocation manslaughter. Moreover, the decision to include the passion/provocation charge did not affect the state's burden of proof to prove each element of the offenses beyond a reasonable doubt, as was evidenced by the judge's discussion of said burden many times during the jury instructions.    Because the trial judge was within her discretion to give an unrequested lesser-included charge and the burden of proof on the state was not alleviated in any way, appellate counsel's decision not to pursue this issue on appeal did not prejudice Petitioner.    Habeas relief is denied on this ground.

**b. *Brady* Violation for Witness Statements (Ground Six(a); Seven)**

Petitioner alleges that trial counsel was ineffective because she failed to raise a *Brady* violation based on incomplete witness statements.    Specifically, Petitioner argues that portions of the witness/victim statement from George Davis were omitted.    Petitioner also alleges that while a witness statement from Celeste Zayes was recorded approximately two and half months after the incident, she indicated that she had spoken to the police before and nothing was written down.

Petitioner raised this claim before the PCR court, where it was rejected:

> As to the pro se matters, there's an issue raised by defendant of a *Brady* violation with regard to partial statements -- I think it's couched in terms of statements of witnesses. They are evidently pre-statement interviews that were conducted by Detective, I think, Murad Muhammad?...
>
> That were not, in fact, included. The allegations set forth in the prose brief for Post-Conviction Relief throughout says may be. May have been included matters that were exculpatory. May have led to a more vigorous cross-examination. Clearly, by including the word "may", that does not set forth the evidence that is needed for Post-Conviction Relief in these papers. Therefore, as to that ground, the Petition is denied.

(D.E. No. 23, PCR H'rg Tr. 11:2-18).   The Appellate Division affirmed for the reasons stated by

24

the PCR court.   *Garry*, 2012 WL 5041551, at *3.

The PCR court's determination that Petitioner failed to state an ineffective assistance of counsel claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.   As properly indicated by the PCR court, a valid *Brady*[5] complaint contains three elements: (1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the defense.   *Moore v. Illinois*, 408 U.S. 786 (1972).   Here, Petitioner failed to allege the required elements as he merely stated that the alleged missing statements "may" have been exculpatory or favorable to the defense.   Consequently, habeas relief is denied on this ground.

### b.   Ballistics Expert (Ground Six(b))

Next, Petitioner alleges that trial counsel was ineffective for failing to call a ballistics expert.   Petitioner also raised this claim in his PCR petition, where it was also denied by the state court:

> As to the ballistics expert, which was another point raised in the pro se brief; well, brief.   From what I understand, defense counsel, and correct me if I'm wrong, Mr. McTigue, you were the trial attorney. Miss Treasurer did arrange for the ballistics to be examined
>
> MR. MCTIGUE: That is correct, Judge.   The State received no report based on that and quite frankly, under the Rules of Court, if there had been anything favorable to the defense, I would not have gotten it. So it was pursued, it was in due course. It was simply an avenue of defense that was investigated and not pursued as, indeed, was the case with the witnesses that were interviewed by Detective Muhammad…
>
> THE COURT: It is also my understanding that, in fact, Miss Treasurer placed on the record, from my recollection, that she did

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

25

not wish to pursue this line.

MR. MCTIGUE: Yes, Judge.   The transcript references are provided in my brief.

THE COURT: Therefore, again, it was investigated. It was pursued by defense counsel and there is nothing to indicate that, in fact, there would have been a different outcome had that evidence been produced.   That is, it is sheer speculation at this point that there was ballistic evidence available to the defense -- the defense experts, that was not admissible -- not utilized at the time of trial. I find just the opposite; that, in fact, the ballistic evidence was more than likely not advantageous to defendant and that's why that witness is not called. Again, as couched in the pro se Petition, it's speculation otherwise and clearly not sufficient in this Post Conviction Relief.

(D.E. No. 23, PCR H'rg Tr. 11:19-13:10).   The Appellate Division affirmed for the reasons stated

by the PCR court.   *Garry*, 2012 WL 5041551, at *3.

It is clear that the PCR court properly considered the actions by trial counsel and

determined that she was not ineffective when she obtained a ballistics expert but then decided not

to call said expert.   As stated by the PCR court, certainly, if the expert that she had already

obtained could have offered any favorable testimony for Petitioner, she would have utilized it.

Petitioner failed to meet either prong of *Strickland* and the state court appropriately denied relief.

*See Pinholster*, 563 U.S. at 189.

**c.   Gunpowder Residue (Ground Six(c) and Eight)**

Petitioner argues that trial counsel was ineffective for failing to raise a *Brady* violation

based on the State's withholding of the results of a gunpowder residue test.   Petitioner raised this

issue in his PCR Petition:

THE COURT: But [Petitioner's PCR counsel], wasn't that fact, in fact, part of the trial? Wasn't it vigorously challenged by defense counsel both in cross-examination, in the motions made, I believe in summation also; that there was no gunshot residue test results. So, I

26

mean, it's not as if your client, or her client at that time, indicated that there was gunshot residue tests and she just -- the State said no and she dropped it. That's not the case and I don't know what is ineffective about counsel's behavior or trial tactics whether, given these circumstances that her client said it was done, the State said it was not done, and she brings it before the jury arguing rather vehemently that it was not done and that they should take into effect -- into account in their deliberations the fact that there are no results. I mean, what else can she do? She can't make a gun fire test and there's nothing no document that this Court has seen, or even Judge Lester saw at the time of trial, saying yes, this test was done and the results were withheld from both defendant and his counsel at the time. So again, for ineffective assistance of counsel, what should have been done that wasn't done?

…

As to the ineffective assistance of the -- on the issue of the gunpowder residue, I have in my colloquy with [Petitioner's PCR counsel] have discussed that.   I am satisfied that, clearly, there is no ineffective assistance of counsel. My reading of the transcript indicates that Miss Treasurer, defense counsel at the time, pursued the issue during trial, before trial and that whether or not it is the truth, which I don't know, the State has always maintained they know of and could find no evidence of gun powder residue and but for making the motion and challenging it during the course of trial, I cannot say that there was, in fact, ineffective assistance of counsel based on what it was done. As to that issue, the first prong is not even satisfied.

(D.E. No. 23, PCR H'rg Tr. 5:9-6:8; 10:12-11:1).   The Appellate Division affirmed for the reasons stated by the PCR court.   *Garry*, 2012 WL 5041551, at *3.

The state court's conclusion that Petitioner failed to meet the first prong of *Strickland* was not an unreasonable application of Supreme Court law.   It is clear from the record that trial counsel thoroughly pursued this issue and there was nothing more she could do to highlight the discrepancy between Petitioner's allegations and the State's allegations.   Certainly, it is without question that her representation of Petitioner on this issue did not fall below an objective standard of reasonableness.   *See Strickland*, 466 U.S. at 690.   Habeas relief is denied on this ground.

27

### d.   Right to Testify (Ground Six(d) and Nine)

Next, Petitioner argues that trial counsel was ineffective because she failed to have a "meaningful discussion" with him about testifying and that it was his decision whether to do so. Petitioner alleges that he wanted to testify because he wanted to explain that while he had been involved in the fight, he had "won" and therefore he had no reason to shoot anyone.

> Next, claims that there was ineffective assistance of counsel in that defense counsel failed to fully advise the defendant of his right to testify at trial. Clearly, the defendant did not testify.  Clearly, the defendant sets forth in his brief that he wanted to testify that he had won the fight; that he had no gun and no reason to shoot anyone. I am satisfied that defense counsel, in not calling defendant to testify, is not ineffective assistance of counsel for the following reasons: One, part of trial strategy. It is clear that if, in fact, the defendant testified, he would have been cross-examined with regards to his prior conviction. But he had a prior conviction, we know, because he was convicted of possession of a weapon by a person convicted persons who are not supposed to have weapons. I'm using the statement of fact as set forth in the Appellate decision.
>
> The witnesses -- the other witnesses, and I'm not talking about the witnesses that count – that defendant later refers to as being on drugs or having drugs problems or on psychotropic medications. The other witnesses clearly place defendant in the courtyard with a gun shooting, and I'm not sure, and I'm not at all convinced, and in fact I'm convinced based on the transcript that I've seen, defendant's testimony would not have changed the outcome of this trial as required by the second prong. I'm satisfied that on both prongs, and based on *Strictland* [sic] *v. Washington*, there's not sufficient evidence to sustain the Petition.

(D.E. No. 23, PCR H'rg Tr. 13:21-15:1).   The Appellate Division affirmed for the reasons stated by the PCR court.   *Garry*, 2012 WL 5041551, at *3.

The PCR court's determination that Petitioner failed to meet the prongs of *Strickland* was not an unreasonable application of clearly established federal law.   The PCR court reviewed the

28

testimony of the State's witnesses, who testified that Petitioner was in the courtyard with the gun, and determined that Petitioner's testimony that he won the fight and therefore had no need for the gun, combined with the introduction of his prior convictions, would not have changed the outcome of the proceeding.   This is especially true because Petitioner's prior convictions included gun possession.   To establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.   Based on Petitioner's prior convictions and the testimony of the other witnesses, the state court's conclusion that there was not a reasonable probability that the result of the proceeding would have been different was not an unreasonable application of *Strickland*. Therefore, habeas relief is denied on this ground.

**e.   Psychiatric History of Witnesses (Ground Six(e))**

Petitioner alleges that it was ineffective assistance when trial counsel failed to introduce evidence of the psychiatric and medication histories of two of the State's witnesses.   Petitioner raised this claim in his PCR Petition, where it was denied:

> The next issue is, in fact, the medication, the Haldol and Prozac that it is alleged that two of the witnesses were taking and their drug abuse with taking at the time of the offense. Again, I am satisfied that even if they were on Prozac or Haldol, as alleged and as, in fact, admitted by the State as to one of the witnesses; that does not change the fact that the other witnesses -- let me just get the names -- Cassanna Harris, who places the defendant in the courtyard with the gun. Celeste M. Sayes, SAYES, who in fact testified that looking out the window, she saw the defendant with a gun firing at the building.
>
> I mean, true, Smith testified and he is one of those that defendant alleges was using Prozac. My understanding of his testimony is that -- and I'm quoting from the Appellate Division opinion: Was leaving

> his apartment at 184 James Street when he saw defendant in the
> courtyard arguing about something with his sister, Tamika. She then
> saw a car pull up and someone inside the car handed defendant a
> pistol, whereupon defendant began shooting toward the apartment
> building at 172 James Street.
>
> Again, given the other testimony, the fact that he may have been on
> Prozac and the effects of that Prozac, are mere speculation. I'm
> satisfied that even if that had been pursued by defense counsel, it
> would not have led to a different outcome.

(D.E. No. 23, PCR H'rg Tr. 15:2-16:4).   The Appellate Division affirmed for the reasons stated

by the PCR court.   *Garry*, 2012 WL 5041551, at *3.

The Court finds that the state court's determination that trial counsel was not ineffective

was not an unreasonable application of *Strickland*.   The court considered the testimony of the two

State witnesses who were allegedly on Haldol and Prozac and concluded that even if counsel had

pursued that line of questioning, it was unlikely to have affected the outcome of the trial.   First, it

was unclear what effect, if any, the medications had on the witnesses' ability to perceive and

recollect the events of that day.   Second, the court found that even disregarding the testimony of

those two witnesses entirely, there were still two others who placed Petitioner in the courtyard

with the gun as the shooter.   As such, the court found that Petitioner suffered no prejudice due to

counsel's failure to question the witnesses on this issue.   This finding was not an unreasonable

application of *Strickland* and Petitioner is not entitled to habeas relief.

**f.   Appellate Counsel's Failure to Raise all Issues (Ground Six(f) and Ten)**

In Ground Ten, Petitioner alleges that appellate counsel was ineffective for failing to raise

on direct appeal all errors by trial counsel contained in his habeas petition.   Petitioner raised this

"cumulative errors" argument in his PCR petition, where the PCR court denied it because it was

"so general" and also because the court had already determined that none of the alleged "errors"

of trial counsel were in fact errors.   (D.E. No. 23, PCR H'rg Tr. 16:5-19).   Therefore, appellate

counsel could not be deemed ineffective for failing to raise them.   (*Id.*).   The Appellate Division

affirmed for the reasons stated by the PCR court.   *Garry*, 2012 WL 5041551, at *3.

This determination by the state court was not an unreasonable application of *Strickland*.

As discussed above and by the state courts, the claims of "errors" by trial counsel were without

merit and therefore appellate counsel was not ineffective for failing to raise such issues on appeal.

*See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("[C]ounsel cannot be deemed ineffective

for failing to raise a meritless claim.") (citation omitted); *United States v. Jackson*, No. 09-5255,

2010 WL 1688543, at *8 (E.D. Pa. Apr. 27, 2010) ("Under *Strickland*, Jackson's appellate counsel

cannot be ineffective for failing to raise a meritless issue on appeal.") (citing *United States v.*

*Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).   Because the state courts did not unreasonably apply

*Strickland* when denying this claim, Petitioner is not entitled to habeas relief on this ground.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of

appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §

2254.   A certificate of appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "A petitioner satisfies

this standard by demonstrating that jurists of reason could disagree with the district court's

resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional

right.   Thus, no certificate of appealability shall issue.

## IV.   CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue.   An appropriate Order follows.

Dated:

*s/Esther Salas*
_____
Esther Salas, U.S.D.J.